THE CHESAPEAKE INSURANCE COMPANY *vs.* ALLEGRE's ADM'RS.—*June,* 1830

Where actions upon two policies of insurance for the same voyage, one upon the cargo, the other upon the vessel, were tried before the same jury at one time, proof that the word cargo, in the one policy, did not, according to the mercantile interpretation and usage of the place where the policies were effected, cover a shipment of mules, is not evidence that the other policy on the vessel is a nullity. A perilous cargo to the insurer does not necessarily, increase the perils of the ship owner.

It is true, as a general rule, that in an order for insurance upon a vessel, it is not necessary to state the nature or condition of the cargo designed to be transported. If the underwriters desire information upon that subject, it is for them to ask it.

In such case, the underwriter is presumed to be acquainted with the ship-owner's rights. In the absence, therefore, of fraud, or evidence to vary the general rule, the payment of a loss under the policy, cannot be resisted upon the ground that a larger premium would have been required for the insurance of a vessel employed in transporting mules, than was stipulated to be paid under a contract which did not mention the nature of the cargo.

APPEAL from *Baltimore* County Court.

This was an action of *Covenant* on a policy of insurance brought by the appellees' intestate against the appellants. The declaration stated, that the policy was made on the 22d of April, 1820, between the then plaintiff and the defendants, whereby the plaintiff, as well for himself as for and on account of all and every other person or persons to whom the said did or might appertain, in part or in whole, did make insurance, lost or not lost, at and from *Rio de la Plata* to *Havana*, with liberty of touching at *Martinique*, $5000 upon the body, tackle, &c. of the brig called the *Eugene*, whereof was master for that voyage, *Chalumeau*, &c. Beginning the adventure upon the said vessel, &c. at and from *Rio de la Plata*, and so should continue and endure until the said vessel be arrived at the said ports of *Martinique* and *Havana*, &c. The declaration, in the usual form, proceeded to state the nature of the policy, and averred that at the time of making the policy, *Charles A. Chalumeau* was the owner of the said brig, and that the insurance was made by the plaintiff, in trust for the use and benefit of the said *Chalumeau*. That on the 1st of July, 1820, the said brig, being tight, staunch and strong, sailed from *Rio de la Plata*, on her intended voyage towards *Martinique* and *Havana*, and whilst so proceeding, on the 15th of July, in year aforesaid, on the high seas, the said brig was, by the perils and dangers of the seas, and by

166 CASES IN THE COURT OF APPEALS

The Chesapeake Insurance Company *vs.* Allegre's Adm'rs.—1830.

stormy and tempestuous weather, and the violence of the winds and waves, bulged, broken, damaged, &c. and the said brig thereby wholly lost to the said *Chalumeau*, &c. The death of the plaintiff was suggested, and his administrators, (the appellees) were made plaintiffs. The defendants pleaded *non infregit conventionem,* and issue was joined.

1. The plaintiff at the trial gave in evidence the policy of insurance upon which this action was brought, dated the 22d of April, 1820, whereby the defendants insured the plaintiff's intestate for the concerned, at and from *Rio de la Plata* to *Havana,* with liberty of touching at *Martinique,* $5000 upon the body, tackle, &c. of the brig called the *Eugene,* whereof was master for the voyage —— *Chalumeau,* or whoever else should go master, &c. Beginning the adventure upon the said vessel, tackle, &c. at and from *Rio de la Plata,* and so should continue and endure until the said vessel be arrived at the ports aforesaid. The policy then proceeded in the form of that used in the case of the same *plaintiffs* against the *Maryland Insurance Company,* omitting the clause respecting the survey of the vessel. By a memorandum signed by the president, on the 8th of June, 1820, the defendants stated that they would consider the above insurance as made at and from *Monte Video* to *Havana.* The plaintiffs also gave in evidence, that at the time the said policy was effected, the vessel was in every respect seaworthy, and arrived in the river *La Plata* at *Monte Video,* and there commenced loading on board her a cargo of mules and jackasses on the 5th of June, 1820, and having taken the same on board, sailed from the river *La Plata* on the 12th of July, of that year, for *Havana*; and during the progress of the voyage, by storms and tempests, the said vessel was compelled by necessity to put into *Rio de Janeiro,* where the vessel was regularly surveyed and ascertained to be totally unworthy of repairs, and condemned and sold; and the assured, in due time, duly made an abandonment of the vessel insured in due form to the

defendants. The plaintiffs further gave in evidence, that the said vessel was an American vessel, and belonged to *Charles A. Chalumeau*, for whose account the insurance was made; and they read in evidence, by consent, the protest made and sworn to by the master, mate, and two of the seamen of the brig *Eugene*, before the vice consul of the *United States of America*, for the port of *Rio de Janeiro*, on the 19th of August, 1820, detailing minutely all the particulars of the shipment of the cargo on board the vessel—her sailing on the voyage, and the loss sustained. The master at the same time requiring a regular survey to be made of the vessel, &c. The plaintiffs also read in evidence sundry depositions of witnesses, taken and returned under a commission issued for that purpose from *Baltimore* County Court, to certain persons, named as commissioners, at *Rio de Janeiro*. As the questions decided by the Court below, do not appear to depend upon this testimony, it is omitted. The plaintiffs also gave in evidence, that at the time of, and long before, and since this policy was effected, mules and jackasses were an ordinary article of merchandize, and were shipped in various directions as merchandize from the river *La Plata*. They further gave in evidence, by *Henry Armstrong* and *James Bosley*, the same witnesses who proved the foregoing facts, that to their knowledge, mules are an ordinary article of exportation from *Rio de la Plata* to *Martinique*, *Santa Cruz*, and other Windward Islands; but that they did not, within their own knowledge, know of mules being carried to *Havana* from the river *La Plata*—never having been at *Havana*. And also proved by the said witnesses, that they never knew of any other cargo being carried from the river *La Plata* to the *West Indies*, than jerked beef or mules.

The defendants then read in evidence, by consent of the plaintiffs, the following order for insurance, upon which the policy above mentioned was made: "*Baltimore*, April 22d, 1820. Gentlemen—Insurance is wanted for account

of the concerned, at and from *Rio de la Plata* to *Havana*, with liberty of touching at *Martinico*, on the brig *Eugene*, *Chalumeau*, master, valued at $5000. Said brig left the Capes, bound out, on the 12th of January last. It is therefore presumed that she will sail from *Rio de la Plata* in the course of the next month. What will be the premium? *J. B. A. Allegre.*" "5 per cent." "Agreed, *J. B. A. Allegre.*"

They also offered to read the following paper: "*Baltimore*, August 15th, 1820. Gentlemen—By a letter from captain *Chalumeau*, of the brig *Eugene*, it is mentioned that she will sail on or about the 5th June, direct for *Havana*. I make you this declaration in order of altering the policy of insurance effected at your office in regard to the time of the sailing of the above vessel. *J. B. A. Allegre.*" "Agreed." It was admitted that the last mentioned paper was carried to the office of the defendants about the time it bears date, by the said *Allegre*, in whose handwriting it was admitted to be. That it was submitted to the board, and agreed to by them, and the word "agreed," entered thereon in his presence. To the admissibility of which paper in evidence the plaintiffs objected, and prayed the opinion of the Court, that the said paper was not legal and proper evidence. But the Court, (HANSON, A. J.) was of opinion that the said paper was admissible, and permitted it to be read to the jury, for the purpose of showing whether the said *Allegre* made the statement in the order of insurance as to the sailing of the said vessel, concerning his actual knowledge as to the time of said sailing, but not for the purpose of showing a change of the original contract between the parties. The plaintiff excepted.

2. The plaintiffs and defendants then offered in evidence that which is stated to have been offered by them in the *third* bill of exceptions, taken in the before mentioned case of the same plaintiffs against the *Maryland Insurance Company;* (see *ante* 140) and the plaintiffs made the same prayers to the Court, and their direction to the jury, in this case, as they made in the above mentioned case. Which

directions, and each of them, the Court refused to give. The plaintiffs excepted.

3. The defendants then prayed the Court to direct the jury, that if they find from the evidence, that according to the usage and mercantile understanding among underwriters and insurance companies in *Baltimore,* where both plaintiffs and defendants resided, a general order for insurance on a vessel is not considered as comprehending a vessel employed in transporting live stock or animals, and that a larger premium is always required by insurers, when an insurance is effected on a vessel that is intended to be employed in transporting a cargo of live stock or animals, than an ordinary cargo of dead merchandize, then the plaintiffs are not entitled to recover in this cause, as the order for the insurance, on which the policy is founded, does not comprehend, according to the mercantile usage and understanding of the same, a vessel employed in transporting a *cargo of mules and jackasses.* Which direction the Court refused to give; but delivered the same opinion and instructions to the jury, as were given by the Court on the prayers of the plaintiffs in the *third* bill of exceptions taken in the case preceding, (*ante* 136) of the same plaintiffs against the *Maryland Insurance Company.* The defendants excepted.

4. The defendants then prayed the Court to direct the jury, that if they find from the evidence given, that a larger premium would have been required by the defendants for an insurance of a vessel to be employed in transporting a cargo of mules and jackasses on the voyage insured, than was stipulated to be paid by the policy in this case, then the risk is materially increased, and the plaintiffs are not entitled to recover. Which direction the Court refused to give. The defendants excepted; and the verdict and judgment being against them, they appealed to the Court of Appeals.

This case was argued before BUCHANAN, Ch. J., ARCHER, and DORSEY, J.

VOL. II.—22

*Meredith*, for the appellants, (the defendants below) contended, that the prayers of the defendants in the *third* and *fourth* bills of exceptions, ought to have been granted. This question is to be treated as a question of concealment. It was the duty of the assured to disclose, that the vessel was to be engaged in the transportation of live stock. *Park on Ins.* 287. *Carter vs, Bœhm*, 3 *Burr.* 1905. The inquiry is, would the fact concealed, effect the premium? If it would, the concealment destroys the policy. *Harrison's Index*, 738. 1 *Marshall*, 471. 1 *Dow*, 324. The premium would have been increased, if it had been known that mules and jackasses were to constitute the cargo. Nothing could excuse the assured, but evidence of the usage of trade, and in this case there is no such evidence.

*Taney*, (Attorney General) and *Mayer*, for the appellees. No attempt was ever before made, to compel the assured to make known the nature of the cargo which was to go in his ship. If he is bound in any case, he is bound in all cases, and this cannot be contended. It is the peculiar province of ships to carry cargo, and when their owners ask for insurance, it is understood they are to enjoy this privilege. They referred to *Philips on Insurance*, 92. 2 *Wash. Cir. Court Rep.* 255.

*Wirt*, for the appellant, in reply. The object of the prayer in the *fourth* exception, was to get an instruction to the jury, that any circumstances which would increase the premium, are material, and must be disclosed. A party is bound to disclose the nature of the cargo when it exposes the ship to peculiar peril. In this case the voyage was direct from *Monte Video* to *Havana;* there was no intermediate port. It has been asked how the assured could know that the cargo was to be a live one. He could not but know that such a cargo might be shipped. That it is necessary to state the service in which the ship

is to be employed, and the concealment will destroy the policy; he referred to *Marshall,* 471, 467, (*note.*) *Harrison's Index.* 738. 1 *Doug.* 97.

DORSEY, J., delivered the opinion of the Court.

With the questions decided by the Court below, on the appellees bills of exception, this Court have no concern. Their duty is confined to an examination of the points determined against the appellants, and for the revision of which their exceptions were taken. It is apparent from the records, that the two cases of *Allegre's Administrators vs. The Maryland Insurance Company,* (*ante* 136) and *The Chesapeake Insurance Company vs. Allegre's Administrators,* were both tried in the County Court at the same time, and before the same jury. Without adverting to this circumstance, it would be difficult to account for the introduction of much of the evidence embraced in the bills of exceptions; in the latter case, it being wholly irrelevant to the issue for trial before the jury. The instructions, therefore, which were prayed for by the appellants, must be predicated only on that portion of the testimony which is applicable to the issue in this cause. The proof, then, of mercantile interpretation, or universal understanding amongst insurance companies and underwriters in the city of *Baltimore,* that the order for insurance of the cargo of the *Eugene,* or goods and merchandize on board of her, would not cover mules or live stock, is not evidence to prove that the policy on the brig is a nullity, because the underwriters were not apprised that she was to be employed in the transportation of mules. A perilous cargo to the insurer, does not necessarily increase the perils of the ship owner. No testimony had been adduced to show, that in the city of *Baltimore,* the order now in question would not sustain a policy in the mule trade. The Court, therefore, were right in refusing to instruct the jury, (as required by the appellants in their *first* bill of exceptions) "that if they find, from the evidence, that according to the usage and mercantile understanding among un-

derwriters and insurance companies in *Baltimore*, where both plaintiffs and defendants resided, a general order for insurance on a vessel, is not considered as comprehending a vessel employed in transporting live stock, or animals," &c. that the plaintiffs were not entitled to recover. To have granted such an instruction, would have been to have authorised the jury to find a fact, of which no testimony legally sufficient to warrant such a finding, had been submitted to their consideration. The refusal of the Court below being sustained, and their opinion conceding to the appellants more than they had a right to demand, the *first* exception furnishes no ground for reversing the judgment.

In rejecting the application of the appellants, as stated in their *second* bill of exceptions, the County Court were also right. As a general rule, it is true that it is not the duty of him who seeks insurance on his vessel, to state to the underwriters the nature or condition of the cargo which he designs to transport. If they desire information on the subject, it is for them to ask it. It would be carrying the doctrine of concealment far beyond its present limits, if, in a case like the present, where granting the instruction assumes as facts established before the jury, (the plaintiffs below having offered evidence to that effect) "that a cargo of mules does not increase the risk of the vessel;" that mules are the known and only article of trade between *La Plata* and *Havana*, except jerked beef, the Court should determine, that, if knowing that a cargo of mules were to be laden on board the brig, the insurers would have demanded a higher premium, then the policy is void; although it might be, that the premium received were double that which would have been required on an insurance on beef, and was an averaged premium, upon a fair calculation, of the probabilities of the nature of the cargo, derived from a knowledge of the trade, with which the underwriters are presumed to be acquainted. No imputation of fraud has been cast upon the assured, or him whose interests he represented. The instruction sought, is not predicated on that basis.　　　　JUDGMENT AFFIRMED.